1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN EDWARD MITCHELL,                  Case No.  1:20-cv-00857-NODJ-HBK (PC)

12              Plaintiff,                   FINDINGS AND RECOMMENDATIONS TO
                                             PERMIT PLAINTIFF TO PROCEED ON
13        v.                                 COGNIZABLE CLAIMS AND DISMISS
                                             REMAINING CLAIMS AND DEFENDANT[1]
14   H. BAEZA, et al.,
                                             (Doc. Nos.  30, 33)
15              Defendants.
                                             14-DAY OBJECTION PERIOD[2]
16

17

18        Plaintiff John Edward Mitchell is a state prisoner proceeding pro se and *in forma pauperis*

19   in this civil rights action under 42 U.S.C. § 1983.  Plaintiff proceeds on his Second Amended

20   Complaint.  (Doc. No. 30).  As more fully set forth below, the undersigned finds the Second

21   Amended Complaint states cognizable First Amendment retaliation claims against Defendants

22   Baeza and Gutierrez, Eighth Amendment Failure to Protect claims against Defendants Baeza,

23   Gutierrez, Valencia-Mendoza, John Doe #1, Parra, and Vang, and conspiracy claims against

24

25   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).
26   [2] On December 1, 2023, this case was assigned to the No District Judge ("NODJ") docket due to the
     elevation of District Judge Ana I. de Alba to the Ninth Circuit Court of Appeals. This case will remain
27   pending until a new district judge is appointed or until another district judge considers these Findings and
     Recommendations. Despite this anticipated delay, the objection period remains fourteen (14) days, absent
28   leave for an extension of time being granted.

1   Defendants Baeza and Gutierrez, but fails to state any other cognizable claims.  Therefore, the

2   undersigned recommends that Plaintiff be allowed to proceed only on the claims deemed

3   cognizable and the remaining claims and defendants be dismissed without prejudice.

**BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

**A.  Procedural History**

6   Plaintiff initiated this action by filing a Complaint under 42 U.S.C. § 1983 on June 22,

7   2020.  (Doc. No. 1).  Prior to the Court screening the Complaint, Plaintiff filed a First Amended

8   Complaint.  (Doc. No. 10).  Because it appeared from the face of the Complaint that this action

9   was not timely filed, the undersigned issued an Order to Show Cause ("OSC") why the action

10  should not be dismissed for failure to comply with the applicable statute of limitations.  (Doc. No.

11  14).  Plaintiff filed a response asserting, *inter alia*, that he is entitled to 1281 days of tolling

12  because he was either exhausting his administrative remedies or was unable to access his legal

13  documents during that time.  (Doc. No. 18 at 5).  On July 9, 2021, the undersigned ordered that no

14  further action be taken on the order to show cause.  (Doc. No. 20).[3]  The Court then screened

15  Plaintiffs FAC and found that it failed to state any cognizable claim.  (*See* Doc. No. 29).  Plaintiff

16  timely filed his operative Second Amended Complaint.  (Doc. No. 30, "SAC").

17  The Court screened Plaintiff's SAC and found that it stated cognizable First Amendment

18  retaliation claims against Defendants Baeza and Gutierrez, Eighth Amendment Failure to Protect

19  claims against Defendants Baeza, Gutierrez, Valencia-Mendoza, John Doe #1, Parra, and Vang,

20  and conspiracy claims against Defendants Baeza and Gutierrez, but failed to state any other

21  cognizable claims.  (*See* Doc. No. 31).  Plaintiff was afforded the option to either (1) voluntarily

22  ─────────────

[3] For actions brought under 42 U.S.C. § 1983, the statute of limitations is dictated "by the forum state's
statute of limitations for personal injury actions," which is two years in California.  *Whiting v. City of
Cathedral City*, 735 F. App'x 927, 928 (9th Cir. 2018); Cal. Civ. Proc. Code § 335.1.  California Code of
Civil Procedure § 352.1(a) provides an additional two years for those imprisoned "for a term less than for
life" when the cause of action accrues.  This limitations period is tolled while an inmate exhausts
administrative remedies.  *Gilmore v. Silva*, 812 F. App'x 689, 690 (9th Cir. 2020).  If a complaint is
untimely, it may still proceed if subject to equitable tolling. *Fink v. Shedler*, 192 F.3d 911, 916–17 (9th
Cir.1999).  At this stage, the Court will not rule on the timeliness of Plaintiff's SAC.  Taking the assertions
in Plaintiff's Response to the Court's OSC as true, (Doc. No. 18), he might be entitled to equitable tolling
that would make his SAC timely.  If appropriate, Defendants may challenge those assertions at a later
stage of these proceedings.  The Court's decision to permit this case to proceed should not be construed as
a finding that the case was timely filed.

2

1   dismiss Defendant McDuffy and the remaining claims not deemed cognizable, or (2) stand on his

2   SAC subject to the undersigned filing a Findings and Recommendation to dismiss Defendant

3   McDuffy and the claims deemed not cognizable.  (*Id*. at 24-25).  On December 14, 2023, Plaintiff

4   filed a Notice indicating he intends to stand on his SAC.  (Doc. No. 33).

5          **B.  Summary of the SAC**

6          Plaintiff's SAC is based on a series of incidents that occurred at California State Prison,

7   Corcoran ("COR") from September 2015 to February 2016.  (*See generally id*.).  The SAC names

8   as Defendants the following COR staff: (1) Correctional Officer H. Baeza, (2) Correctional

9   Officer C.M. Gutierrez, (3) Correctional Officer J. Valencia-Mendoza, (4) Correctional Officer A.

10  Parra, (5) Correctional Officer Vang, and (6) John Doe #1.  (*Id*. at 2).  The SAC also names as a

11  Defendant (7) FNU McDuffy, CDCR Inmate # AR 9722.  (*Id*.).

12         Liberally construed, the SAC alleges First Amendment retaliation claims against

13  Defendants Baeza, Gutierrez, Valencia-Mendoza, John Doe #1, Parra, Vang, and McDuffy (*id*. at

14  9-13), Eighth Amendment failure to protect claims against Defendants Baeza, Gutierrez,

15  Valencia-Mendoza, Parra, John Doe #1, and Vang (*id*. at 13-14); state tort negligence claims

16  against Defendants Parra, Valencia-Mendoza, John Doe #1, and Vang (*id*. at 15-16); conspiracy

17  claims against Defendants Baeza, Gutierrez, Vang, Parra, Valencia-Mendoza, John Doe #1, and

18  McDuffy (*id*. at 16-17); Bane Act claims against Defendants Baeza, Gutierrez, Parra, Valencia-

19  Mendoza, Vang, John Doe #1, and McDuffy (*id*. at 17-18); and Intentional Infliction of

20  Emotional Distress claims against Defendants Baeza and Gutierrez (*id*. at 18).  The following

21  facts are presumed true at this stage of the screening process.

22         On June 14, 2015, Plaintiff filed a grievance against unspecified COR employees for

23  violating his religious rights.  (*Id*. at 5 ¶ 1).  Three months later, on September 24, 2015,

24  Defendant Baeza told Plaintiff "get back in there before I slap the **** out of you" while

25  attempting to provoke Plaintiff by making jerking movements at him and kicking Plaintiff's

26  property into his cell.  (*Id*. ¶ 2).  At the time, Plaintiff was awaiting transfer to CSP-Sacramento

27  ("CSP-SAC") to attend a pretrial matter in *Mitchell v. Haviland*, 2:09-cv-03012 (E.D. Cal. 2009),

28  another prisoner civil rights case alleging excessive force claims against CDCR officers.  (*Id*.).

On October 29, 2015, while being housed at CSP-SAC Plaintiff told his mental health clinician that he was having anxiety attacks and nightmares about being returned to COR because Defendants Baeza and Gutierrez were constantly threatening and harassing him and were attempting to find someone to attack him. (*Id*. at 5-6 ¶ 4). During a classification committee hearing, the clinician advised the committee of Plaintiff's concerns, completed a CDC 128 Informational Chrono and sent it to COR. (*Id*. at 6 ¶ 4). On or about November 9, 2015, Counselors Moreno and Bass (not Defendants in this action) told Plaintiff, "We received the 128 from CSP-Sac, you won't leave until you deserve it." (*Id*. ¶ 5). As Plaintiff was crossing the yard with Moreno and Bass that day, Defendant Gutierrez was manning the tower. (*Id*.). Gutierrez shook his head at Plaintiff and called him "staff complaint Mitchell." (*Id*.).

On December 1, 2015, while Plaintiff was speaking with another correctional officer in the dayroom about sending out his legal mail, Defendant Gutierrez yelled down from the tower into the dayroom full of inmates, "We know you drop dimes thats [sic] all you do, youre [sic] not wanted on this yard!" (*Id*. ¶ 6). Defendant McDuffy was present and asked Defendant Gutierrez if he could go into another inmate's cell to give him a tattoo, and Gutierrez yelled down "No, Mitchell is 602ing and snitching on our program so until you guys get him out of here theres [sic] no more of that." (*Id*.). In the days following this incident, Baeza and Gutierrez repeatedly searched the cells of other inmates, took their TVs and other appliances. (*Id*. at 6-7 ¶ 6). Other inmates told Plaintiff that Defendant Baeza was telling the inmates that the searches were because of Plaintiff. (*Id*. at 7 ¶ 6).

On or about December 2, 2015, Defendant Baeza said to Plaintiff, "you filed a Complaint on me huh, you want to move back to five bldg., hey your [sic] my buddy, we're friends, you need a[n] escort to medical you got safety concerns." (*Id*. ¶ 7). Later that day, Baeza said to Plaintiff, "that[']s a fine hot mess you got yourself into." (*Id*.). Plaintiff infers these statements were "a warning to get off the yard" and that he "suffered more fear and confusion" and told his mental health clinician that "he believed his life was in danger." (*Id*.).

On January 2, 2016, Defendant Valencia-Mendoza allowed Defendant McDuffy out of his cell during PM med-line. (*Id*. ¶ 9). The SAC asserts upon information and belief that McDuffy

does not receive medication at PM med-line.  (*Id*.).  Defendants Parra and Doe #1 allowed McDuffy to exit the building without checking his I.D. card to verify whether he received medication.  (*Id*.).  Plaintiff was also released from his cell and upon exiting the building encountered Defendant McDuffy who stated, "you still snitchin Mitchell" while attacking Plaintiff.  (*Id*.).  No yard or tower officer intervened to stop the attack.  (*Id*.).  After Plaintiff entered the building, McDuffy attacked him again.  (*Id*. at 8 ¶ 9).  Defendants Parra, Doe #1, and Valencia-Mendoza watched but did not intervene.  (*Id*.).  After about two minutes, Officers Billings and Vang arrived.  (*Id*.).  Officer Billings repeatedly shouted "stop" to no avail.  (*Id*.).  Officer Vang stood on the perimeter watching.  (*Id*.).  Finally, Defendant Valencia-Mendoza shouted "stop" and McDuffy stopped attacking Plaintiff.  (*Id*.).  During the attack, Plaintiff's left eyelid was sliced down the middle and Plaintiff later received reconstructive surgery to repair the injury.  (*Id*.).  A few days after the incident, Defendant McDuffy told Plaintiff, "They lied to me." (*Id*.).

On January 4, 2016, Defendant Baeza came to Plaintiff's cell door and laughed about the attack, saying, "[I] heard they had fun without me."  (*Id*. ¶ 10).  On January 20, 2016, Baeza again came to Plaintiff's cell and threatened to cut off Plaintiff's hair, calling it a "dirty hot mess."  (*Id*. ¶ 11).

Plaintiff was found not guilty of a Rule Violation Report for fighting related to the January 2, 2016 incident, while McDuffy was found guilty.  (*Id*. ¶ 12).

### 1. Retaliation

The SAC asserts a retaliation claim against Defendant Baeza based on: (1) his threat to "slap the **** out of" Plaintiff on September 24, 2015, (2) his comments to Plaintiff on December 2, 2015, which Plaintiff interpreted as a "veiled threat"; (3) Baeza's cell searches of Plaintiff's neighbors, coupled with Baeza blaming the searches on Mitchell; (4) Baeza threatening on January 20, 2016 to cut off Plaintiff's hair;  (5) Baeza conspiring with Gutierrez and McDuffy to have McDuffy attack Plaintiff in retaliation for Plaintiff's filing of various grievances; and (6) Baeza's making various threats against Plaintiff which provoked Plaintiff to file more grievances, thereby triggering further retaliation against him.  (*Id*. at 10 ¶ 23)

The SAC asserts a retaliation claim against Defendant Gutierrez based on: (1) Gutierrez calling Plaintiff "staff complaint Mitchell" on November 9, 2015; (2) Gutierrez yelling to Plaintiff on December 1, 2015, loud enough for all the inmates in the dayroom to hear, "we know you drop dimes that[']s all you do your [sic] not wanted on this yard" then telling McDuffy that he could not give other inmates tattoos until other inmates "get [Plaintiff] out of here"; and (3) Gutierrez conspiring with Defendants Baeza and McDuffy to have McDuffy attack Plaintiff in retaliation for his filing of various grievances. (*Id*. at 11) The SAC asserts that because of "his negative interactions with CDCR officers" Plaintiff was diagnosed with Post-Traumatic Stress Disorder. (*Id*. at 12 ¶ 24).

The SAC asserts a retaliation claim against Defendant Valencia-Mendoza based on: (1) Valencia-Mendoza releasing McDuffy from his cell; and (2) failing to intervene when McDuffy attacked Plaintiff. (*Id*. ¶ 25) The SAC contends that Valencia-Mendoza took those "adverse actions" because Plaintiff filed staff complaints against Defendants Baeza and Gutierrez, and that a causal connection between these events "is shown by the timeline of events and or his actions or inactions did not reasonably advance a legitimate correctional nor penological purpose. (*Id*.).

The SAC asserts a retaliation claim against Defendants Parra, Doe #1, and Vang based on: (1) these Defendants allowing McDuffy to exit the building for PM med line so that he could attack Plaintiff on the yard; and (2) allowing the attack to continue inside of the building, where Parra and Doe #1 were assigned as floor officers. (*Id*. ¶ 26) The SAC alleges the actions of Defendants Parra, Doe #1, and Vang caused him depression, fear, and serious bodily injury, and asserts a causal connection is demonstrated by the timeline of events. (*Id*.).

Finally, the SAC asserts a retaliation claim against Defendant McDuffy based on McDuffy attacking Plaintiff on January 2, 2016, which the SAC alleges was done "because [Plaintiff] filed CDCR 602s and Complaints against C/Os Baeza and Gutierrez." (*Id*. at 13 ¶ 27) The SAC alleges the attack has made Plaintiff reluctant to submit grievances "because of fear of not knowing who's going to attack him next." (*Id*.). To establish a causal connection with Plaintiff's First Amendment conduct, the SAC points to McDuffy's declaration, attached to the SAC. (*Id*.).

2.  <u>Failure to Protect</u>

The SAC asserts an Eighth Amendment Failure to Protect claim against Defendants Baeza and Gutierrez based on: (1) Gutierrez and Baeza telling other inmates that Plaintiff was a "child molester" and a "rat" that was "602ing the program," and searching the cells and confiscating the property of other inmates, knowing this would expose Plaintiff to a substantial risk of being attacked; (2) paying McDuffy to attack Plaintiff.  (*Id*. at 13 ¶ 30).

The SAC asserts a Failure to Protect claim against Defendant Valencia-Mendoza based on: (1) Valencia-Mendoza opening McDuffy's cell door at PM medication call on January 2, 2016, despite McDuffy not receiving medication in the evening; (2) Valencia-Mendoza having a reasonably opportunity to prevent or end McDuffy's attack on Plaintiff in the dayroom on January 2, 2016, but failing to do so.  (*Id*. ¶ 31).

The SAC asserts a Failure to Protect claim against Defendant Parra based on (1) Parra allowing Defendant McDuffy to exit his building into the yard, where he attacked Plaintiff, without checking that McDuffy was receiving medication at PM med-line; and (2) failing to intervene when McDuffy attacked Plaintiff inside the building.  (*Id*. ¶ 32).

The SAC asserts a Failure to Protect claim against Defendants Vang and John Doe #1 based on their failure to intervene when Defendant McDuffy attacked Plaintiff inside the building on January 2, 2016 despite having a realistic opportunity to do so.  (*Id*.).

3.  <u>Negligence</u>

The SAC asserts a negligence claim against Defendants Baeza and Gutierrez based on their referring to Plaintiff as a "snitch" and "child molester," soliciting another inmate to attack Plaintiff, and interfering with Plaintiff's grievances.  (*Id*. at 15 ¶ 35).  The SAC contends that these actions breached Defendants' duty to Plaintiff and were the proximate cause of physical and emotional harm to Plaintiff, including PTSD.  (*Id*.).

The SAC asserts a negligence claim against Defendants Valencia-Mendoza, Parra, Doe #1, and Vang based on their failure to restrict Defendant McDuffy's movement, which was the proximate cause of McDuffy's attack on Plaintiff and the resulting injuries.  (*Id*. at 15-16 ¶ 36).

////

7

### 4.  Other State Claims

Plaintiff asserts against all Defendants, based on unspecified conduct, a California Tort Claims Act claim, Bane Act claim, and violations of California Penal Code §§ 2600 and 2601. (*Id*. ¶ 37).

### 5.  Conspiracy

The SAC asserts that Defendants Baeza, Gutierrez, Vang, Parra, Valencia-Mendoza, Doe #1 and McDuffy "conspired together, acted individually or jointly in concert to physically assault the Plaintiff in violation of" his constitutional rights.  (*Id*. at 16 ¶ 40).

Specifically, the SAC alleges that Defendant Baeza, Gutierrez and McDuffy conspired to plan the attack, (*id*. at 16-17 ¶ 41), and Defendants Valencia-Mendoza, Parra, Doe #1 and McDuffy conspired to release McDuffy from his cell during med-line and to not intervene when McDuffy attacked Plaintiff (*id*. at 17 ¶ 42).

### 6.  Bane Act Claims

The SAC asserts that based on the foregoing allegations, all Defendants interfered with Plaintiff's state and federal rights to file grievances without fear of being attacked in retaliation and or the right to be protected from attack.  (*Id*. at 18 ¶ 47).

### 7.  Intentional Infliction of Emotional Distress

The SAC asserts that unspecified conduct by Defendants Baeza and Gutierrez was intended to harm Plaintiff, was "outrageous" and so "extreme" as to exceed all bounds of what is usually tolerated in a "civilized community."  (*Id*. at 18 ¶¶ 48-50).  Their conduct caused PTSD to Plaintiff, and thus Defendants Baeza and Gutierrez are liable for intentional infliction of emotional distress.  (*Id*. ¶ 50).

### 8.  Relief Sought

As relief for all of the above claims, Plaintiff seeks an unspecified order be issued to the Director of CDCR, that he be awarded $150,000 in compensatory and punitive damages for each of the claims in the SAC, and that he be granted various other relief.  (*Id*. at 19).

*////*

*////*

**APPLICABLE LAW AND ANALYSIS**

**A.  Screening Requirement and Rule 8**

Plaintiff commenced this action while in prison and is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, that the court screen any complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant.  28 U.S.C. § 1915A.  This requires the Court to identify any cognizable claims and dismiss the complaint, or any portion, which is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the Court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the Plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that the complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading could be cured by the allegation of other facts, the pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, it is not the role of the Court to advise a pro se litigant on how to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.

### B. Color of State Law

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)); *Soo Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017). "The 'under color of law' requirement under § 1983 is the same as the Fourteenth Amendment's 'state action' requirement." *Chudacoff* at 1149 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982)).

Courts have consistently rejected attempts by prisoner plaintiffs to sue fellow inmates under § 1983. *See, e.g., Jackson v. Foster*, 372 F. App'x 770, 771 (9th Cir. 2010) (concluding that "the district court properly dismissed Jackson's excessive force claim because [fellow] inmate . . . did not act under color of state law under any formulation of the governmental actor tests"); *see also Gettimier v. Burse*, 2015 WL 75224, at *5 n.3 (E.D. Mo. Jan. 6, 2015) ("The fact that a fellow inmate is not a 'state actor' for purposes of § 1983 litigation is so fundamental as to not require citation."); *Rigano v. Cty. of Sullivan*, 486 F. Supp. 2d 244, 256 n.15 (S.D.N.Y. 2007) ("It is well-established that a § 1983 claim is only cognizable against a state actor and not a fellow inmate."); *cf. Williams v. Calidonna*, 2007 WL 432773, at *1-2 (N.D.N.Y. Feb. 2, 2007) (dismissing § 1983 action against inmates despite allegation they were working as state informants). It is uncontested that at all times relevant, Defendant McDuffy was an inmate in the

10

custody of CDCR.  Accordingly, Plaintiff cannot proceed on his federal claims against Defendant McDuffy in this § 1983 action.  And as set forth below, because Plaintiff's state law claims are barred for failure to comply with the Government Claims Act, Plaintiff's state law claims against McDuffy also fail.  Thus, the undersigned finds the SAC fails to state any claim against inmate McDuffy.

### C.  Doe Defendant

The SAC does not provide a name or other identifying information for one of the officers who was allegedly present for the January 4, 2015 attack on Plaintiff.  (*See* Doc. No. 30 at 8 ¶ 9). Rule 10(a) of the Federal Rules of Civil Procedure requires a plaintiff to include the names of the parties sued in the action.  Fed. R. Civ. P. 10(a).  The use of Doe defendants is generally disfavored in federal court because the United States Marshal cannot serve a summons and complaint on an anonymous defendant.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Plaintiff provides the date and location of the incident and the names of other officers who were present; however, this is insufficient by itself to serve the officers in question.  "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, and so on, but he must allege sufficient facts to show how each doe defendant individually violated his constitutional rights.  If the plaintiff does so, he may be given leave to obtain the names of doe defendants during discovery and seek leave to amend to name those defendants." *Finefeuiaki v. Maui Police Dep't*, 2018 WL 4839001, at *3 (D. Haw. Oct. 4, 2018), *citing Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).  Here, because as set forth below Plaintiff has alleged facts sufficient to state a cognizable Eighth Amendment claim as to Defendant John Doe #1, the undersigned recommends that the SAC proceed on the claim against Defendant Doe #1 and that Plaintiff be permitted to engage in discovery for the limited purpose of identifying Defendant Doe #1 and amend the SAC accordingly.

### D.  First Amendment Retaliation

It is clear prisoners have First Amendment rights to file a grievance or civil rights complaint against correctional officials.  *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009). To state a claim for First Amendment retaliation, a plaintiff must allege five elements: (1) he

1    engaged in protected activity; (2) the state actor took an adverse action against the plaintiff; (3) a

2    causal connection between the adverse action and the protected conduct; (4) the defendant's

3    actions would chill or silence a person of ordinary fitness from protected activities; and (5) the

4    retaliatory action did not advance a legitimate correctional goal. *Chavez v. Robinson*, 12 F.4th

5    978, 1001 (9th Cir. 2021) (quoting *Rhodes*, 408 F.3d at 567–68). A retaliatory motive may be

6    shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as

7    direct evidence. *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir.2003); *McCollum v. Ca. Dep't of*

8    *Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011). Mere speculation that a defendant acted

9    out of retaliation is not sufficient. *Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir. 2014) (citing

10   cases).

11          The undersigned addresses Plaintiff's claims as to the six remaining Defendants[4] in

12   seriatim.

13                  1.  Officer Baeza

14          The SAC's retaliation claims against Baeza are based, first, on three instances of verbal

15   threats or statements Baeza made to Plaintiff. On one occasion, Baeza told Plaintiff "get back in

16   there before I slap the **** out of you." (Doc. No. 30 at 5 ¶ 1). "[V]erbal harassment or abuse

17   . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v.*

18   *Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (internal citations omitted). Defendant Baeza's

19   threat to slap Plaintiff if he didn't comply with an order, without more, does not rise to the level

20   of a constitutional violation. Moreover, the SAC does not allege any facts linking Baeza's

21   statement to Plaintiff's First Amendment conduct. Plaintiff's speculation that Baeza's comments

22   on September 24, 2015 were motivated by Plaintiff's filing of a grievance against unspecified

23   COR officers more than three months earlier, is insufficient to support an inference of such a

24   connection. (*See* Doc. No. 30 at 5). Finally, from the minimal factual context in Plaintiff's claim,

25   it appears Defendant Baeza was ordering Plaintiff to get back into his cell, and thus his command

26   had the legitimate correctional objective of preserving or maintaining institutional order. Thus,

27   _____

28   [4] Because, as set forth above, the SAC cannot bring a section 1983 claim against McDuffy, the Court does
     not analyze the individual claims alleged against McDuffy.

1 │ the SAC fails to state a retaliation claim based on September 24, 2015 incident.

2 │       Next, the SAC alleges that on December 2, 2015, Defendant Baeza told Plaintiff, "you

3 │ filed a Complaint on me huh, you want to move back to five bldg., hey your [sic] my buddy,

4 │ we're friends, you need a[n] escort to medical you got safety concerns." (*Id.* ¶ 7). Plaintiff

5 │ himself notes that "at first it made no sense" what Defendant Baeza meant by these comments.

6 │ (*Id.*). Later that day, Baeza said to Plaintiff, "thats a fine hot mess you got yourself into." (*Id.*).

7 │ Plaintiff eventually interpreted these comments together as a warning for Plaintiff to get off the

8 │ yard. (*Id.*). The Court does not find that these comments warrant an exception to the general rule

9 │ that verbal harassment does not rise to the level of a constitutional violation. *See Oltarzewski*,

10 │ 830 F.2d at 139. While the "mere threat of harm can be an adverse action," *Watison v. Carter*,

11 │ 668 F.3d 1108, 1114 (9th Cir. 2012), Defendant Baeza did not make any discernible threat of

12 │ harm against Plaintiff based on him continuing to exercise his First Amendment rights.

13 │ Accordingly, the SAC fails to state a retaliation claim based on these comments.

14 │       Third, the SAC asserts that Defendant Baeza retaliated against Plaintiff by initiating cell

15 │ searches of Plaintiff's neighbors, confiscating thousands of dollars of inmates' property, and

16 │ blaming Plaintiff for the searches to foster animosity against him among other inmates. (Doc.

17 │ No. 30 at 10 ¶ 23). This claim is supported by the assertion that "Baeza also took the 'adverse

18 │ actions' to do cell searches taking inmate appliances and contraband . . . and incite them by

19 │ blameing [sic] his actions on the plaintiff . . ." (*Id.*). Plaintiff also cites the declaration of inmate

20 │ Cesar Pizana, in which Pizana states that Defendant Baeza and Officer Alvarez searched his cell

21 │ on an unspecified date in December 2015, confiscated a cell phone, and told Pizana "Inmate

22 │ Mitchell aka Yaya was snitching on inmates on the yard." (Doc. No. 30 at 23). Pizana also

23 │ alleges that Baeza "would tell inmates that were STG to assault Mitchell aka Yaya to get him off

24 │ the yard because he was snitching on the yard." (*Id.*). The Court finds these factual allegations

25 │ sufficient to support a retaliation claim. Labeling an inmate a "snitch" in response to his filing of

26 │ grievances in order to subject him to retaliation by fellow inmates can state a cognizable federal

27 │ claim. *See Valandingham v. Borquez*, 866 F.2d 1135, 1138 (9th Cir. 1989); *see also Sutton v.*

28 │ *Wash. State Dep't of Corr.*, 2015 WL 4748233, at *7 (E.D. Wash. Aug. 11, 2015) ("It is well

1    established that being revealed as a snitch may be sufficient to [establish a substantial risk of

2    serious harm].")  According to Pizana's declaration, Baeza invited other inmates to attack

3    Plaintiff because he was "snitching on the yard[,]" which appears to be a reference to Plaintiff

4    filing grievances and/or complaints.  (Doc. No. 30 at 23).  Thus, Baeza's adverse action of

5    labeling Plaintiff a "snitch" was motivated by Plaintiff's protected First Amendment conduct.

6    Plaintiff alleges these actions had a chilling effect on his filing of further grievances and caused

7    him psychological harm.  (*Id*. at 11 ¶ 23).  And the undersigned can discern no legitimate

8    penological purpose for inviting other inmates to attack Plaintiff.  Thus, the SAC adequately

9    alleges a First Amendment retaliation claim against Defendant Baeza based on his labeling

10   Plaintiff a snitch.

11        Fourth, the SAC asserts that Defendant Baeza retaliated against Plaintiff by telling him

12   that he would cut off Plaintiff's hair, because it was "a hot mess."  (*Id*. at 8 ¶ 11).  First, the Court

13   is not persuaded that Baeza's comments can be construed as an "adverse action."  In context,

14   Baeza's remark was at most verbal harassment, which as noted above is insufficient to establish a

15   constitutional violation.  *See Oltarzewski*, 830 F.2d at 139.  Moreover, the SAC is devoid of any

16   facts linking the comment to Plaintiff's protected First Amended conduct.  Plaintiff's mere

17   speculation that the remark was made in response to Plaintiff's filing of a grievance or complaint

18   is insufficient to state a claim.  *See Wood*, 753 F.3d at 905.

19        Fifth, the SAC alleges that Baeza retaliated against Plaintiff by conspiring with

20   Defendants Gutierrez and McDuffy to have McDuffy attack Plaintiff.  (*Id*. at 10 ¶ 23).  This claim

21   is supported by the attached declaration of Defendant McDuffy.[5]  In it, McDuffy asserts that

22   Defendants Gutierrez and Baeza solicited him to attack Plaintiff because he was a "snitch" and

23   was "complaining via 602s about the way the building was running."  (*Id*. at 26).  Thus, liberally

24   _____

25   [5] While McDuffy's declaration is unsigned, at the screening stage this does not warrant disregarding the
     allegations therein.  The Court liberally construes the detailed allegations in the declaration to be part of
     the SAC and thus presumes the factual assertions true at this stage of the screening process.  *See Jenkins*,
26   395 U.S. at 421; *Bernhardt*, 339 F.3d at 925.  While the declaration appears to describe a quid pro quo
     between McDuffy and Plaintiff in exchange for preparation of the declaration, because the Court does not
27   engage in credibility determinations at the screening stage, this is also not a basis for disregarding the
     allegations set forth in the declaration.

28

construed, the SAC alleges that Defendants Baeza and Gutierrez directed McDuffy to attack Plaintiff in response to his filing of prison grievances.  As a result, Plaintiff suffered a physical assault, which is adequate to establish a chilling effect.  *See Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (Plaintiff sufficiently alleges a chilling effect by demonstrating harm from retaliatory actions that is "more than minimal.").  Because having inmates attack one another clearly does not constitute a legitimate penological objective, these facts adequately allege a First Amendment retaliation claim against Defendant Baeza.

Finally, the SAC alleges that by harassing Plaintiff repeatedly and prompting him to file grievances, Baeza set up Plaintiff for further retaliation.  This tenuous argument—essentially alleging that Baeza is responsible for future unspecified retaliation by unknown parties, is unpersuasive.  Accordingly, it does not establish a retaliation claim.

## 2.  Officer Gutierrez

The SAC asserts a retaliation claim against Defendant Gutierrez first based on Gutierrez calling Plaintiff "staff complaint Mitchell" on November 9, 2015.  As noted above, however, mere verbal harassment is insufficient to state a claim.  *Oltarzewski*, 830 F.2d at 139.

Next, the SAC alleges that Gutierrez retaliated by yelling to Plaintiff on December 1, 2015, loud enough for all the inmates in the dayroom to hear, "we know you drop dimes that[']s all you do your [sic] not wanted on this yard" then telling McDuffy that he could not give other inmates tattoos until other inmates "get [Plaintiff] out of here."  (Doc. No. 30 at 6 ¶ 6).  The undersigned finds that this conduct is sufficient to establish a retaliation claim.  As noted above, labeling an inmate a "snitch" in response to his filing of grievances in order to subject him to retaliation by fellow inmates can state a cognizable federal claim.  *See Valandingham*, 866 F.2d at 1138; *see also Sutton*, 2015 WL 4748233 at 7.

Here, Gutierrez announced to a large group of Plaintiff's fellow inmates that he "drop[s] dimes that's all you do[,]" effectively labeling Plaintiff a "snitch," and openly encouraged the inmates to "get [Plaintiff] out of here."  (Doc. No. 30 at 6 ¶ 6).  These statements can reasonably be interpreted as inviting harm on Plaintiff and encouraging other inmates to retaliate against Plaintiff for his protected First Amendment conduct.  *See Valandingham*, 866 F.2d at 1138.

15

1   Accordingly, Defendant Gutierrez's actions violated Plaintiff's First Amendment rights.

2          As to Plaintiff's claim that Gutierrez retaliated against him by conspiring with Defendant

3   Baeza to have McDuffy attack Plaintiff, as noted above, Defendant McDuffy's declaration

4   supports this claim.  The declaration alleges that Baeza and Gutierrez specifically directed

5   McDuffy to harm Plaintiff and take his property in response to his filing of "602s" and his

6   "snitching."  (Doc. No. 30 at 26).  Thus, the SAC adequately alleges a First Amendment claim

7   against Gutierrez based on this allegation as well.

8                     3.   Officer Valencia-Mendoza

9          The SAC alleges a retaliation claim against Defendant Valencia-Mendoza based on

10   Valencia-Mendoza releasing McDuffy from his cell and failing to intervene when McDuffy

11   attacked Plaintiff.  (Doc. No. 30 at 12 ¶ 25).  The SAC contends that Valencia-Mendoza took

12   those "adverse actions" because Plaintiff filed staff complaints against Defendants Baeza and

13   Gutierrez, and that a causal connection between these events "is shown by the timeline of events

14   and or his actions or inactions did not reasonably advance a legitimate correctional nor

15   penological purpose.  (*Id*.).

16          Because Plaintiff does not specify which protected First Amendment conduct prompted

17   Valencia-Mendoza's alleged retaliatory acts, however, the Court is unable to infer a causal

18   connection based on "the timeline of events."  Nor is there any other evidence supporting the

19   inference that Valencia-Mendoza's actions were motivated by Plaintiff's First Amendment

20   conduct.  Thus, Plaintiff retaliation claim as to Valencia-Mendoza amounts to mere speculation,

21   which is insufficient to state a claim.  *See Wood*, 753 F.3d at 905.

22                     4.   Officers Parra, Doe #1 and Vang

23          The SAC asserts a retaliation claim against Defendants Parra, Doe #1, and Vang based on

24   the three Defendants allowing McDuffy to exit the building for PM med line and allowing the

25   attack on Plaintiff to continue inside of the building, where Parra and Doe #1 were assigned as

26   floor officers.  (Doc. No. 30 at 12 ¶ 26).  Plaintiff asserts that "the 'Causal Connection' is

27   apparent when the timeline and events are reviewed."  (*Id*.).  The mere assertion that a causal

28   connection can be inferred from an unspecified timeline is insufficient to show such a connection.

16

Indeed, beyond this conclusory statement, the SAC fails to allege any facts showing that Defendants Parra, Doe #1, and Vang's actions and inactions were motivated by Plaintiff's First Amendment conduct.  Accordingly, Plaintiff's retaliation claim as to these three Defendants amounts to mere speculation, which is insufficient to state a First Amendment retaliation claim.  *See Wood*, 753 F.3d at 905.

### E.  Eighth Amendment Failure to Protect Claim

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and unusual punishment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); U.S. Const. Amend. VIII.  "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).  "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation if prison officials know of and disregard a substantial risk of serious harm to the plaintiff."  *Thomas v. Hernandez*, 2022 WL 1173339, at *4 (E.D. Cal. Apr. 20, 2022) (citing *Farmer*, 511 U.S. at 847, *Hearns v. Terhune*, 413 F.3d 1036 (9th Cir. 2005).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842.  To state a failure to protect claim, the prisoner must establish that the prison official was deliberately indifferent to a serious threat to the plaintiff's safety.  *Id.* at 834 (citing *Helling v. McKinney*, 509 U.S. 35, 35 (1993)).  Thus, a showing of deliberate indifference rests on facts clearly evincing "obduracy and wantonness, not inadvertence or error in good faith."  *Whitley v. Albers,* 475 U.S. 312, 319 (1986).  "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"  *Labatad v. Corr. Corp. of Am.,* 714 F.3d 1155, 1160 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 847).  To satisfy the objective prong, it is enough for the inmate to demonstrate that

1  he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered

2  need not have been the most likely result among this range of outcomes.  *Lemire v. California*

3  *Dep't of Corr. & Rehab*., 726 F.3d 1062, 1076 (9th Cir. 2013).  "[I]t does not matter whether the

4  risk comes from a single source or multiple sources, any more than it matters whether a prisoner

5  faces an excessive risk . . . for reasons personal to him or because all prisoners in his situation

6  face such a risk."  *Farmer*, 511 U.S. at 843.

7          1.  <u>Officer Baeza and Officer Gutierrez</u>

8        The SAC alleges Defendants Baeza and Gutierrez violated Plaintiff's Eighth Amendment

9  rights by telling other inmates that Plaintiff was a "child molester" and a "rat" that was "602ing

10  the program," and searching the cells and confiscating the property of other inmates, knowing this

11  would expose Plaintiff to a substantial risk of being attacked.  The Court does not accept as true

12  that Gutierrez and Baeza specifically labeled Plaintiff a "child molester" or "rat" to other inmates

13  because these claims are supported only by Plaintiff's conclusory statements.  The SAC does,

14  however, contain sufficient factual allegations establishing that Baeza and Gutierrez made

15  disparaging remarks about Plaintiff to other inmates that exposed Plaintiff to a substantial risk of

16  serious harm.

17        As to Defendant Gutierrez, on December 1, 2015, he yelled to the entire dayroom at COR

18  that Plaintiff "drop[s] dimes" and openly invited other inmates to "get [Plaintiff] out of here."

19  (Doc. No. 30 at 6 ¶ 6).  Labeling an inmate a "snitch," as Defendant Gutierrez effectively did, is

20  well-established as exposing that inmate to a substantial risk of serious harm.  *See Sutton*, 2015

21  WL 4748233 at *7.  Moreover, the inmate who ultimately attacked Plaintiff, Inmate McDuffy,

22  was present for this incident.  (Doc. No. 30 at 6 ¶ 6).  And when McDuffy asked Gutierrez if he

23  could tattoo an inmate in his cell, Gutierrez specifically blamed Plaintiff for not allowing

24  McDuffy to do so.  (*Id*.).  When McDuffy attacked Plaintiff roughly a month later, he stated "you

25  still snitchin Mitchell"  (*Id*. at 7 ¶ 9).  These facts support an inference that the attack was

26  motivated at least in part by Defendant Gutierrez's comments, which exposed Plaintiff to a

27  substantial risk of serious harm.  Thus, the FAC alleges a cognizable Eighth Amendment failure

28  to protect claim against Defendant Gutierrez.

As to Defendant Baeza, the Court accepts as true the declaration of Cesar Pizana, who attests that in December 2015, Defendant Baeza specifically labeled Plaintiff a snitch to him and other "STG"[6] inmates when conducting cell searches and confiscating inmate property, and invited them to get rid of Plaintiff.  While it is unclear whether Baeza's comments specifically prompted Inmate McDuffy to attack Plaintiff, the fact that Baeza labeled Plaintiff a "snitch" to other inmates and invited them to attack Plaintiff is sufficient to establish that he exposed Plaintiff to a substantial risk of serious harm.  And the injury that Plaintiff ultimately suffered—physical and psychological injuries resulting from McDuffy's attack—were clearly within the range of harms expected to result from Baeza's actions.  Thus, the SAC adequately alleges an Eighth Amendment failure to protect claim against Baeza due to his labeling Plaintiff a snitch and inviting other inmates to attack Plaintiff.

The undersigned also finds the SAC adequately alleges that Baeza and Gutierrez are liable for failure to protect based on their alleged hiring of Inmate McDuffy to attack Plaintiff.  In his declaration, Defendant McDuffy states that in December 2015, Defendant Gutierrez summoned him to the rotunda, where Defendant Baeza handed McDuffy a set of documents about Plaintiff and told him to "get rid of this snitch."  (Doc. No. 30 at 25-26).  The documents purported to show that Plaintiff was a child molester who had been filing various complaints and grievances while at COR.  (*Id*. at 26).  Defendant Baeza told McDuffy "I want him hurt." (*Id.*).  Gutierrez told McDuffy to "bag up" Plaintiff, which meant to take all of his property.  (*Id.*).  "A day or two later" McDuffy waited for an opportunity to attack Plaintiff, assaulted him on the yard and took a chain off Plaintiff's neck.  (*Id.*).  These factual allegations, liberally construed, establish that Defendants Baeza and Gutierrez deliberately exposed Plaintiff to a serious risk of harm by inciting violence against him by another inmate and that Plaintiff was attacked as a result.  These allegations are sufficient to set forth an Eighth Amendment failure to protect claim.

### 2.  Officer Valencia-Mendoza

The SAC asserts a Failure to Protect claim against Defendant Valencia-Mendoza based

---

[6] The Court infers this refers to inmates who were members of a Security Threat Group, i.e. a prison gang.

1    on: (1) Valencia-Mendoza opening McDuffy's cell door at PM medication call on January 2,

2    2016, despite McDuffy not receiving medication in the evening; (2) Valencia-Mendoza having a

3    reasonably opportunity to prevent or end McDuffy's attack on Plaintiff in the dayroom on

4    January 2, 2016, but failing to do so.  (*Id*. ¶ 31).

5          The Court finds that Valencia-Mendoza releasing McDuffy from his cell on January 2,

6    2016 is sufficient to establish deliberate indifference to a serious risk of substantial harm.  The

7    unsigned declaration of Inmate McDuffy supports the inference that Defendant Valencia-

8    Mendoza was aware of a plan to attack Plaintiff.  In it, McDuffy states that after he first attacked

9    Plaintiff on the yard and Plaintiff fled into the building, "the C/O that was in the watch tower told

10   me to 'finish him off.'"  (*Id*. at 26).  The facts alleged in the SAC make clear that McDuffy is

11   referring to Defendant Valencia-Mendoza.  Liberally construed, this adequately alleges that

12   Valencia-Mendoza supported the attack on Plaintiff, and the Court can thus reasonably infer that

13   Valencia-Mendoza was aware of McDuffy's plan to attack Plaintiff when he released him from

14   his cell that night.  Indeed, Valencia-Mendoza not only enabled the attack, but actively

15   encouraged McDuffy to continue attacking Plaintiff after an initial assault.  This is sufficient to

16   establish an Eighth Amendment failure to protect claim.

17         The SAC also asserts that Valencia-Mendoza had a reasonable opportunity to intervene

18   after McDuffy began attacking him.  The SAC alleges that Valencia-Mendoza was manning the

19   control tower at the time of the attack and that the attack took place "directly in front of his

20   window." (Doc. No. 30 at 14 ¶ 31).  Thus, the Court reasonably infers that Defendant Valencia-

21   Mendoza was aware of McDuffy's attack on Plaintiff and the risk it posed of substantial harm.

22   Nevertheless, he failed to intervene.  For all the reasons set forth above, the SAC adequately

23   alleges an Eighth Amendment failure to protect claim against Defendant Valencia-Mendoza.

24                     3.  Officer Parra

25         Next, the SAC asserts a Failure to Protect claim against Defendant Parra based on (1)

26   Parra allowing Defendant McDuffy to exit his building into the yard, where he attacked Plaintiff,

27   without checking that McDuffy was receiving medication at PM med-line; and (2) failing to

28   intervene when McDuffy attacked Plaintiff inside the building.  (Doc. No. 30 at 14 ¶ 32).

While Defendant Parra may have been negligent in permitting Inmate McDuffy to exit the building without verifying that he received evening medication, his actions do not demonstrate deliberate indifference to a serious risk of harm.  There are no facts—beyond Plaintiff's speculation as to Defendant Parra's involvement in a conspiracy—establishing Parra's knowledge that McDuffy intended to harm Plaintiff that evening.  Thus, the SAC does not allege facts showing Defendant Parra possessed the state of mind necessary to satisfy the second prong of a deliberate indifference claim.

However, the SAC adequately alleges that Defendant Parra failed to intervene after Defendant McDuffy attacked Plaintiff "directly in front of" Parra and John Doe #1 in Building 4. (*Id*.).  The SAC alleges elsewhere that the attack lasted at least 2 minutes and that at no time did Defendant Parra intervene to stop the assault despite it occurring in his immediate vicinity.  (*Id*. at 8 ¶ 9). Thus, Defendant Parra had a reasonable opportunity to protect Plaintiff from further harm but failed to do so.  The SAC therefore adequately alleges an Eighth Amendment claim for failure to protect against Defendant Parra.

### 4. Doe #1

The SAC alleges that Defendants Doe #1 was in the same proximity to the attack as Defendant Parra but failed to intervene.  (*Id*. at 14 ¶ 32).  Thus, Officer Doe #1 was aware of the substantial risk of harm posed to Plaintiff by allowing the attack to continue but failed to take any action to stop it.  Thus, the SAC adequately alleges an Eighth Amendment failure to protect claim against Defendant Doe #1.

### 5. Officer Vang

According to the SAC, Officers Vang and Billings arrived on the scene after the attack had been underway for some time.  (*Id*. at 8 ¶ 9).  Officer Billings shouted "stop" in an attempt to halt the altercation but was unsuccessful.  (*Id*.).  Meanwhile, Officer Vang "stood on the perimeter watching." (*Id*.).  Liberally construing the SAC, Officer Vang was in close proximity to the attack on Plaintiff and had a realistic opportunity to intervene to prevent further harm, but failed to do so.  Thus, the SAC adequately alleges an Eighth Amendment failure to protect claim as to him as well.

21

**F.  Civil Conspiracy**

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another, which results in damage.  *Gilbrook v. City of Westminster,* 177 F.3d 839, 856 (9th Cir. 1999).  To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement.  *Id.* To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.  *Id.*  A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.  *Id.* at 856–57.

Conclusory allegations of conspiracy are not enough to support a § 1983 conspiracy claim.  *Burns v. County of King,* 883 F.2d 819, 821 (9th Cir. 1989) (per curiam).  Although an "agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown," *Woodrum v. Woodward County,* 866 F.2d 1121, 1126 (9th Cir. 1989), "[d]irect evidence of improper motive or an agreement to violate a plaintiff's constitutional rights will only rarely be available.  Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action."  *Mendocino Environmental Center v. Mendocino County,* 192 F.3d 1283, 1302 (9th Cir. 1999). Thus, "an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants."  *Id.* at 1301.

Here, the SAC asserts that Defendants Baeza, Gutierrez, Vang, Parra, Valencia-Mendoza, Doe #1 and McDuffy "conspired together, acted individually or jointly in concert to physically assault the Plaintiff in violation of" his constitutional rights.  (*Id.* at 16 ¶ 40).  Specifically, the SAC alleges that Defendant Baeza, Gutierrez and McDuffy conspired to plan the attack, (*id.* at 16-17 ¶ 41), and Defendants Valencia-Mendoza, Parra, Doe #1 and McDuffy conspired to release McDuffy from his cell during med-line and to not intervene when McDuffy attacked Plaintiff (*id.* at 17 ¶ 42).

This claim is supported, at least in part, by the attached declaration of Defendant

McDuffy.  As noted above, the declaration describes a meeting in December 2015 during which Defendants Baeza and Gutierrez gave McDuffy a set of documents about Plaintiff and told him to "get rid of this snitch."  (Doc. No. 30 at 25-26).  Defendant Baeza told McDuffy "I want him hurt." (*Id.*).  Gutierrez told McDuffy to "bag up" Plaintiff.  (*Id.*).  "A day or two later" McDuffy waited for an opportunity to attack Plaintiff, assaulted him on the yard and took a chain off Plaintiff's neck.  (*Id.*).  After his initial attack on Plaintiff, the tower officer on duty, who is not identified by name, told McDuffy to "finish [Plaintiff] off."  (*Id.* at 26).  As noted above, the Court infers that the SAC is referring to Defendant Valencia-Mendoza, who was the tower officer on duty in Plaintiff's yard.

Liberally construing the allegations in the declaration, the FAC adequately alleges a conspiracy claim as to Defendants Baeza, Gutierrez, and Valencia-Mendoza.  The SAC alleges that Defendants Baeza and Gutierrez met with McDuffy and ordered him to attack Plaintiff and steal his property, which McDuffy subsequently did.  While McDuffy's declaration does not allege that Valencia-Mendoza was involved in soliciting McDuffy to attack Plaintiff, the fact that Valencia-Mendoza released McDuffy from his cell and then encouraged McDuffy to "finish [Plaintiff] off" after the initial assault supports an inference that Valencia-Mendoza was aware of the attack and shared in the unlawful objective of harming Plaintiff.

As to Defendants Parra, Vang, and John Doe #1, however, the SAC fails to state a conspiracy claim. The SAC does not allege any facts from which the Court can infer that these Defendants were aware of the plan to harm Plaintiff or that any of their actions were consciously done in furtherance of that objective.  Notably, McDuffy does not mention any coordination with these Defendants in his declaration nor allege any facts to suggest they were aware of a plan to attack Plaintiff.  Plaintiff's mere speculation to that effect is insufficient to sustain a claim.  *See Claiborne v. Beebe*, 2008 WL 544577, at *3-4 (E.D. Cal. Feb. 26, 2008), *report and recommendation adopted*, 2008 WL 942661 (E.D. Cal. Apr. 7, 2008); *Sherman v. Hill*, 2022 WL 17345926, at *12 (C.D. Cal. Sept. 14, 2022), *report and recommendation adopted*, 2022 WL 17342194 (C.D. Cal. Nov. 30, 2022).

Thus, the SAC adequately alleges a claim of civil conspiracy as to Defendants Baeza,

Gutierrez, and Valencia-Mendoza sufficient to survive the low threshold for *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).

### D. State Law Claims and Government Claims Act

The SAC alleges a number of state law claims, including for negligence, intentional infliction of emotional distress, and violations of the Bane Act. California's Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1245 (Cal. 2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *see also Inman v. Anderson*, 294 F. Supp. 3d 907, 925 (N.D. Cal. 2018) (Government Claims Act compliance required for claims under California Bane Civil Rights Act, Cal. Gov't Code 52.1). Because Plaintiff does not allege compliance with the Government Claims Act as to any of his state law claims—including his claims for negligence, intentional infliction of emotional distress, the Bane Act, the California Tort Claims act, and California Penal Code §§ 2600 and 2601—the SAC fails to state any cognizable state law claims.

### CONCLUSION

For the reasons set forth above, the undersigned finds that Plaintiff states cognizable First Amendment retaliation claims against Defendants Baeza and Gutierrez, Eighth Amendment Failure to Protect claims against Defendants Baeza, Gutierrez, Valencia-Mendoza, John Doe #1, Parra, and Vang, and conspiracy claims against Defendants Baeza and Gutierrez. The undersigned will therefore recommend Plaintiff be permitted to proceed on the above claims and the remaining claims be dismissed. Because Defendant McDuffy was not a state actor, the undersigned will recommend he be dismissed from this action. Finally, the undersigned will recommend that Plaintiff be permitted to engage in discovery, prior to issuance of a discovery and scheduling order, for the limited purpose of determining the identity of Defendant John Doe #1,

1  so that he may be served.

2      Accordingly, it is hereby **RECOMMENDED**:

3      1.    This action proceed only on Plaintiff's First Amendment retaliation claims against

4  Defendants Baeza and Gutierrez, Eighth Amendment Failure to Protect claims against Defendants

5  Baeza, Gutierrez, Valencia-Mendoza, John Doe #1, Parra, and Vang, and conspiracy claims

6  against Defendants Baeza and Gutierrez.

7      2.    Defendant McDuffy and the remaining claims be dismissed from this action based

8  on Plaintiff's failure to state claims upon which relief may be granted.

9      3.    Plaintiff be permitted to engage in discovery, prior to issuance of a discovery and

10  scheduling order, for the limited purpose of identifying Defendant John Doe #1.

11  NOTICE TO PARTIES

12      These findings and recommendations will be submitted to the United States district judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

14  days after being served with these findings and recommendations, a party may file written

15  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

16  Findings and Recommendations."  Parties are advised that failure to file objections within the

17  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

18  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

19

20  Dated:    December 22, 2023

21  HELENA M. BARCH-KUCHTA
    UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

25