1

2

3

4

5

6

7                                    UNITED STATES DISTRICT COURT

8                                    EASTERN DISTRICT OF CALIFORNIA

9

10     JOHN EDWARD MITCHELL,                          Case No. 1:20-cv-00857-KES-HBK (PC)

11                           Plaintiff,                ORDER GRANTING DEFENDANTS'
                                                       REQUEST FOR JUDICIAL NOTICE
12             v.
                                                       (Doc. No. 75)
13     H. BAEZA, et al.,
                                                       FINDINGS AND RECOMMENDATIONS TO
14                           Defendants.               GRANT DEFENDANTS' MOTION TO
                                                       DISMISS[1]
15
                                                       (Doc. No. 74)
16
                                                       14-DAY DEADLINE
17

18             Pending before the Court is Defendants H. Baeza, C.M. Gutierrez, J. Valencia-Mendoza,

19     and A. Parra's Motion to Dismiss[2] and Request for Judicial Notice filed on July 30, 2024.  (Doc.

20     Nos. 74, 75).  Plaintiff timely filed an Opposition (Doc. No. 81), and Defendants filed a Reply

21     (Doc. No. 83).  For reasons set forth below, the undersigned grants Defendants' Request for

22     Judicial Notice and recommends the District Court grant Defendants' Motion to Dismiss and

23     assign a strike to Plaintiff under the Prison Litigation Reform Act.

24             ////

25

26     _____

       [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
27     (E.D. Cal. 2023).
       [2] Defendant McDuffey, an inmate, does not join in the Motion. The undersigned finds the Motion
28     dispositive as to Plaintiff's Bane Act claim against McDuffey because the claim is governed by the same
       statute of limitations analysis.

                                                         1

1

**BACKGROUND**

2

Plaintiff, after completing his exhaustion of administrative remedies on September 12,

3

2017, constructively filed this civil rights complaint pursuant to 42 U.S.C. § 1983 on June 18,

4

2020.[3]  (*See* Doc. No. 1; Doc. No. 18 at 3).  Prior to screening the original complaint, Plaintiff,

5

with the Court's permission, filed a First Amended Complaint on September 30, 2020.  (Doc.

6

Nos. 8, 10).[4]  On March 15, 2021, this Court issued an Order to Show Cause ("OTSC") why

7

Plaintiff's claims should not be dismissed as barred by the applicable statute of limitations.  (Doc.

8

No. 14).  Plaintiff timely filed a response to the OTSC, stating that the statute of limitations

9

period should be equitably tolled during the "extensive period of time beyond his control" that he

10

was exhausting his administrative remedies, time he was in the hospital, time spent pursuing a

11

"related" federal lawsuit, and when "he was without access to his legal property and/or pertinent

12

documents between transfers from prison to prison," all of which he asserts totaled approximately

13

1281 days (or roughly 3.5 years).  (Doc. No. 18 at 1-2, 5).  The Court, in its July 9, 2021 Order,

14

noted that no further action would be taken on the OTSC and proceeded to screen Plaintiff's First

15

Amended Complaint.  (Doc. No. 20).

16

Plaintiff proceeds on his Second Amended Complaint ("SAC"), as screened, which

17

alleges First Amendment retaliation claims against Defendants Baeza and Gutierrez; (2) Eighth

18

Amendment failure to protect claims against Defendants Baeza, Gutierrez, Valencia-Mendoza,

19

John Doe #1, and Parra, (3) intentional infliction of emotional distress ("IIED") claims against

20

Defendants Baeza and Gutierrez, (4) negligence claims against Defendants Baeza, Gutierrez,

21

Valencia-Mendoza, Parra, and John Doe #1, (5) Bane Act claims against Defendants Baeza,

22

Gutierrez, Valencia-Mendoza, and inmate McDuffey, and (6) civil conspiracy claims against

23

Defendants Baeza and Gutierrez.  (Doc. Nos. 30, 42 at 1-2).[5]  The gravamen of the SAC is that

24

Defendants (1) conspired to have inmate McDuffey attack Plaintiff on January 2, 2016 out of

25

retaliation for Plaintiff filing grievances against prison officials and/or (2) Defendants failed to

26

27

28

---

[3] Although docketed on June 22, 2020, the Court applies the mailbox rule and deems the pleading filed on the date Plaintiff certifies he signed it and presumably delivered to correctional officials for mailing—here June 18, 2020. (Doc. No. 1 at 24).  *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (addressing mailbox rule).
[4] This case was reassigned to the undersigned on November 17, 2020.  (Doc. No. 9).
[5] Defendant Vang was dismissed pursuant to Federal Rule of Civil Procedure 4(m).  (Doc. Nos. 68, 85).

1  intervene when the attack occurred.  (*See generally* Doc. No. 30).

2         On July 30, 2024, Defendants filed the instant Motion to Dismiss in response, arguing that

3  Plaintiff's claims are barred by the statute of limitations because he filed the instant suit roughly

4  4.5 years after the claims accrued.  (Doc. No. 74 at 7).  Defendants contend the outcome of this

5  motion hinges on whether the Court finds that two types of tolling—statutory tolling and

6  equitable tolling—are found to apply concurrently or consecutively.  Defendants discuss at length

7  the split of authority in the Ninth Circuit regarding how these two types of tolling should interact

8  and argue the Court should apply statutory and equitable tolling concurrently.  (*Id*. at 13-17).

9         Defendants note that Plaintiff had fully exhausted his administrative remedies within less

10  than 18 months of the claim accruing—before the statute of limitations had even begun running,

11  due to the effect of Cal. Code Civ. Proc. § 352.1.[6]  Defendants contend that Plaintiff provides no

12  plausible justification for the ensuing nearly three-year delay before he filed this lawsuit.  (*Id*. at

13  17-18).  They argue that common sense should preclude Plaintiff from "tacking on" the time he

14  was exhausting his administrative remedies because it completely overlapped with the statutory

15  tolling provided by § 352.1.  (Doc. No. 74 at 16-17).  Moreover, as a policy matter, Defendants

16  argue that applying the two types of tolling consecutively leads to unnecessary delays, rewards

17  gamesmanship by plaintiffs, and unfairly forces defendants to respond to lawsuits many years

18  after the underlying events occurred.  (*Id*. at 18).  In support of the Motion, Defendants submit a

19  Request for Judicial Notice (Doc. No. 75), asking the Court to take judicial notice of two state

20  court orders related to Plaintiff's convictions and sentences for which he remains incarcerated.

21         In a brief Opposition, Plaintiff argues that the Court already addressed the statute of

22  limitations issue in his favor when it elected to take no further action on the Order to Show Cause

23  on July 9, 2021.  (*See* Doc. No. 81).  Plaintiff does not address the conflicting authorities

24  regarding how to apply statutory and equitable tolling, and instead asks the Court to follow its

25  prior ruling on the statute of limitations issue.  (*Id*.).  Because Plaintiff is proceeding pro se, the

26  _____

27  [6] See *Reece v. Basi*, 2013 WL 1339048, at *8 (E.D. Cal. Apr. 3, 2013) (noting that "[u]nder California law,
    §352.1(a) prevents the statute of limitations from running until two years after accrual of a prisoner's
    cause of action") (citing *Carlson v. Blatt*, 87 Cal. App. 4th 646, 650 and *Fink v. Shedler*, 192 F.3d 911,

28  914 (9th Cir. 1999)).

1  Court will liberally construe his Opposition as incorporating his earlier-filed Response to the

2  Court's Order to Show Cause.

3      In a Reply, Defendants contend that Plaintiff has abandoned his opposition to the Motion

4  to Dismiss by failing to address the grounds advanced in the moving brief and that the Motion

5  should be granted on that basis alone.  (Doc. No. 83 at 2-3).  Further, Defendants argue that the

6  Court's decision not to take further action on the Order to Show Cause in July 2021 was not a

7  final decision on the issue in Plaintiff's favor.  They point out that in the Court's December 1,

8  2023 Screening Order, the Court explicitly noted that the statute of limitations issue was not yet

9  resolved, stating, "[a]t this stage, the Court will not rule on the timeliness of Plaintiff's [Second

10  Amended Complaint] . . . If appropriate, Defendants may challenge those assertions at a later

11  stage of these proceedings."  (Doc. No. 83 at 2) (citing Doc. No. 31 at 3-4, n. 2).  Thus, no prior

12  ruling on the timeliness of Plaintiff's claims binds the Court.  Defendants argue that for the

13  reasons articulated at length in their moving brief, the Court should grant the Motion.  (Doc. No.

14  83 at 3).

15                      **APPLICABLE LAW AND ANALYSIS**

16      **A.  Request For Judicial Notice**

17      Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not

18  subject to reasonable dispute" because they are either "generally known within the trial court's

19  territorial jurisdiction," or they "can be accurately and readily determined from sources whose

20  accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court may take judicial

21  notice of a pertinent law or regulations at any stage of the proceedings.  *Id.*; *see also National

22  Agricultural Chemicals Assn. v. Rominger*, 500 F.Supp. 465, 472 (E.D. Cal. 1980).  The Court

23  may take judicial notice on its own or at the request of any party.  *Id.* 201(c).

24      Courts judicially notice other court proceedings "if those proceedings have a direct

25  relation to the matters at issue."  *United States ex. Rel. Robinson Rancheria Citizens Counsel v.*

26  *Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations and internal quotation marks omitted);

27  *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).  However, a court may not take judicial

28  notice of findings of facts from another case.  *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022

1   (S.D. Cal. 2006).  The Court may take judicial notice on its own or at the request of any party,

2   and "must take judicial notice if a party requests it and the court is supplied with the necessary

3   information." Fed. R. Evid. 201(c).

4          In their Request for Judicial Notice (Doc. No. 75), Defendants ask the Court to take

5   judicial notice of the following orders related to Plaintiff's criminal matter, *People of California*

6   *v. John Mitchell*:

7      1. The abstract of judgment in *People v. John Edward Mitchell*, No. GA032253 (Los

8          Angeles Sup. Ct. Jun. 12, 1998); and

9      2. The ruling in *People v. John Edward Mitchell*, No. B123517 (Cal. Ct. App. Dec. 12,

10         1999), affirming Plaintiff's sentence and the denial of his motion to suppress.

11         These court proceedings have a direct relation to the matters at issue because the nature of

12  Plaintiff's sentence (i.e. whether Plaintiff is serving a term of less than life) has a bearing on

13  whether he is eligible for statutory tolling under California law.  Both records are relevant to the

14  central issue in the instant Motion to Dismiss.  While the Court may not take judicial notice of

15  findings of fact that may be included in these documents, the Court must take judicial notice of

16  the existence and content of these two orders.  *See* Fed R. Evid. 201(c).  Thus, the Court takes

17  judicial notice that Plaintiff is serving a prison sentence of less than life.

18         **B.  Rule 12(b)(6)**

19         A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the

20  legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

21  2011).  Dismissal for failure to state a claim is proper if there is a "lack of a cognizable legal

22  theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id*.; *see also*

23  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, the

24  complaint must have sufficient facts to state a facially plausible claim to relief).  In deciding a

25  motion under Rule 12(b)(6), the court accepts as true all well-pled factual allegations in the

26  complaint and determines whether the factual allegations are sufficient to state a right to relief

27  above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Nw. Envtl. Def. Ctr.*

28  *v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011) (court accepts as true all material allegations in the

1    complaint, as well as any reasonable inferences to be drawn from them).

2         Where a motion to dismiss is granted, a district court must decide whether to grant leave

3    to amend.  Courts are instructed to apply Rule 15 with extreme liberality.  *Eminence Capital, LLC*

4    *v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted); *Winebarger v.*

5    *Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019).

6    Only where leave to amend would be futile, because "the allegation of other facts consistent with

7    the challenged pleading could not possibly cure the deficiency," should leave to amend be denied.

8    *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

9         **C.  Statute of Limitations Analysis**

10        "A statute-of-limitations defense, if 'apparent from the face of the complaint,' may

11   properly be raised in a motion to dismiss."  *Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*

12   *PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp.*, 623

13   F.2d 117, 119 (9th Cir. 1980)).  However, "[w]hen a motion to dismiss is based on the running of

14   the statute of limitations, it can be granted only if the assertions of the complaint, read with the

15   required liberality, would not permit the plaintiff to prove" that the statute has not run.  *Jablon v.*

16   *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  A "limitations period commences when

17   the plaintiff has 'a complete and present cause of action.'"  *Bay Area Laundry & Dry Cleaning*

18   *Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v.*

19   *Ray*, 312 U.S. 96, 98 (1941)).  If the complaint is filed after the limitations period has expired,

20   subject to any applicable tolling, the action is untimely, and the court must dismiss the complaint.

21   *See Seven Arts*, 733 F.3d at 1254.

22        As further discussed below, Plaintiff's lawsuit was filed five months and twenty days past

23   the presumptive four-year deadline of January 2, 2020.  The central question for this Court is

24   whether Plaintiff is entitled to a further five months and twenty days of equitable tolling to the

25   statutory two years of tolling already provided under California law to make Plaintiff's claims

26   timely.

27        ////

28        ////

6

1                   1.   <u>Plaintiff's Federal Claims Are Time Barred</u>

2          Plaintiff SAC proceeds on the federal claims of First Amendment retaliation, Eighth

3    Amendment failure to protect, and civil conspiracy.  (*See* Doc. No. 41).  Because section 1983

4    contains no specific statute of limitation, federal courts apply the forum state's statute of

5    limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004);

6    *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th

7    Cir. 1999).  California's statute of limitations for personal injury actions is two years, thus the

8    applicable statute of limitations for Plaintiff's First Amendment retaliation and Eighth

9    Amendment failure to protect claims is two years under state law.  *Jones*, 393 F.3d at 927 (citing

10   Cal. Code Civ. Proc. § 335.1).  The Ninth Circuit has held that state law also governs the statute

11   of limitations for civil conspiracy actions, which under California law "is determined by the

12   nature of the action in which the conspiracy is alleged."  *Gibson v. United States*, 781 F.2d 1334,

13   1340 (9th Cir.1986); *Harry's Cocktail Lounge, Inc. v. McMahon*, 1995 WL 338885, at *14 (C.D.

14   Cal. Mar. 15, 1995), aff'd, 103 F.3d 138 (9th Cir. 1996).  Because the object of Defendants'

15   alleged civil conspiracy was assault and battery on Plaintiff, a personal injury tort, the applicable

16   statute of limitations for that claim is also two years.  *See Jones*, 393 F.3d at 927 (citing Cal. Code

17   Civ. Proc. § 335.1).

18         The law of the forum state also governs tolling.  *Wallace v. Kato*, 549 U.S. 384, 394

19   (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989)); *Jones*, 393 F.3d at 927 (noting

20   that in actions where the federal court borrows the state statute of limitation, the federal court also

21   borrows all applicable provisions for tolling the limitations period found in state law).  Under

22   California law, the statute of limitations for prisoners serving less than a life sentence is tolled for

23   two years.  Cal. Code Civ. Proc. § 352.1(a); *Johnson v. California*, 207 F.3d 650, 654 (9th Cir.

24   2000), overruled on other grounds, 543 U.S. 499 (2005).  Accordingly, the effective statute of

25   limitations for most California prisoners is four years (two years statutory tolling plus two-year

26   limitations period).

27        *////*

28        *////*

1    Unlike the length of the limitations period, however, "the accrual date of a § 1983 cause

2    of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549

3    U.S. at 388; *Hardin*, 490 U.S. at 543–44 (federal law governs when a § 1983 cause of action

4    accrues).   "Under the traditional rule of accrual . . . the tort cause of action accrues, and the

5    statute of limitation begins to run, when the wrongful act or omission results in damages."

6    *Wallace*, 549 U.S. at 391.  Put another way, "[u]nder federal law, a claim accrues when the

7    plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*,

8    370 F.3d at 955; *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

9    "The Ninth Circuit determines the accrual of civil conspiracies for limitations purposes in

10   accordance with the last overt act doctrine." *Gibson v. United States*, 781 F.2d 1334, 1340 (9th

11   Cir. 1986) (citations omitted).  Under this doctrine, "[i]njury and damage in a civil conspiracy

12   action flow from the overt acts, not from the mere continuance of a conspiracy." *Id.* (citations

13   and internal quotation marks omitted).  Accordingly, a plaintiff can recover only for the overt acts

14   that occurred within applicable the statute of limitations period.  *Id.*

15                    a.   When Plaintiff's Cause of Action Accrued

16   As the Court previously determined, Plaintiff's allegations "exclusively involve events

17   that occurred no later than January 2, 2016."  (Doc. No. 14 at 1).  Plaintiff's SAC and his

18   response to the Order to Show Cause confirm that the incident giving rise to his claims took place

19   on January 2, 2016.  (See Doc. No. 30 at 7-8; *see* Doc. No. 18 at 3 ¶ 2).  Thus, it is undisputed

20   that Plaintiff's failure to protect and retaliation causes of action accrued on January 2, 2016 when

21   plaintiff "[knew] or had reason to know of the injury which is the basis of the action." *See*

22   *Maldonado*, 370 F.3d at 955.

23   The same accrual date applies to Plaintiff's civil conspiracy claim, in which the "last overt

24   act" of the alleged in the SAC was the attack by Inmate McDuffey on January 2, 2016.  The fact

25   that Plaintiff alleges he did not learn the full details of the conspiracy until December 2018, when

26   he was housed in the same facility as Inmate McDuffey and could obtain a declaration from him,

27   does not alter the accrual date.  (*See* Doc. No. 18 at 4 ¶ 6); *see also Woods v. California*, 2018

28   WL 1071183, at *7 (E.D. Cal. Feb. 27, 2018) (finding civil conspiracy claim untimely where

8

plaintiff alleged it was concealed from her and only learned of it after the statute of limitations had run), report and recommendation adopted, 2018 WL 9986806 (E.D. Cal. Aug. 27, 2018), *aff'd sub nom. Woods v. Storms*, 793 F. App'x 542 (9th Cir. 2020).

> b. Statutory Tolling

It is uncontested that as a state prisoner incarcerated for a term of less than life, Plaintiff is entitled to the benefit of two years of statutory tolling under California Code of Civil Procedure § 352.1.[7]  As reflected in the Abstract of Judgment attached to Defendants' Request for Judicial Notie, Plaintiff was sentenced on June 16, 1998 to a term of 85 years to life with the possibility of parole,[8] a sentence that was affirmed by the Court of Appeal.  (Doc. No. 75 at 4, 22).  In *Grasso v. McDonough Power Equipment, Inc.*, the California Court of Appeal ruled that prisoners serving life sentences with the possibility of parole should receive the benefit of §352.1(a).  70 Cal. Rptr. 458, 460–61 (1968); *see Brooks v. Mercy Hosp.*, 1 Cal. App. 5th 1, 6–7 (2016) (citing *Grasso* and affirming its central holding regarding eligibility for statutory tolling under section 352.1).  Thus, Plaintiff is eligible for two years of statutory tolling under Cal. Code Civ. Proc. § 352.1, a fact that Defendants do not contest.  (*See* Doc. No. 74 at 7).  Consequently. pursuant to the operation of Cal. Code Civ. Proc. § 352.1(a), the statute of limitations on Plaintiff's claims therefore did not begin to run until two years after his claim accrued, i.e. on January 2, 2018.  *See Reece*, 2013 WL 1339048 at *8.

////

////

---

[7] That provision states:

> If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Civ. Proc. Code § 352.1(a).

[8] While the Court of Appeal acknowledged in a footnote that "the sentence imposed is for all practical purposes a life sentence without any real possibility of parole" (Doc. No. 75 at 22 n. 7) this does not formally change Plaintiff's eligibility for statutory tolling.

1                  c.   <u>Equitable Tolling</u>

2            In his Response to the Court's Order to Show Cause, Plaintiff argues he is also entitled to

3    equitable tolling based on several tolling events, including the time he spent exhausting his

4    administrative remedies.[9]  (*See* Doc. No. 18).

5            Equitable tolling is "a judge-made doctrine 'which operates independently of the literal

6    wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary

7    to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370

8    (2003), as modified (Aug. 27, 2003).  Equitable tolling "require[s] a showing of three elements:

9    "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on

10   the part of the plaintiff." *McDonald v. Antelope Valley Cmty. Coll. Dist*., 45 Cal. 4th 88, 102

11   (2008).  With respect to a plaintiff's time spent exhausting his administrative remedies, equitable

12   tolling is automatic.  *See Elkins v. Derby*, 12 Cal. 3d 410, 414 (1974)) ("Where exhaustion of an

13   administrative remedy is mandatory prior to filing suit, equitable tolling is automatic: 'It has long

14   been settled in this and other jurisdictions that whenever the exhaustion of administrative

15   remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is

16   tolled during the time consumed by the administrative proceeding.'").  The California Supreme

17   Court also sanctions using equitable tolling "in carefully considered situations to prevent the

18   unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice."

19   *Lantzy,* 31 Cal. 4th at 370 (citing cases).

20                 d.   <u>Whether Statutory and Equitable Tolling Should Apply Concurrently or</u>

21                        <u>Consecutively</u>

22           District courts in the Ninth Circuit are split as to whether a period of equitable tolling

23   should be added to the two years of statutory tolling under Cal. Code Civ. Proc. § 352.1 when

24   those periods overlap.  *See Stevenson v. Holland*, 2017 WL 2958731, at *5 (E.D. Cal. Jul. 11,

25   2017) (noting that "[n]o binding authority on this question exists and district courts in this circuit

26

---

27   [9] Defendants do not address all the tolling events cited in Plaintiff's Response, instead focusing
exclusively on the period when Plaintiff was exhausting his administrative remedies.  (*See generally* Doc.
28   No. 74).

1  are divided."). Defendants cite both published and unpublished district court cases in this Circuit

2  falling on opposite sides of the issue. (*See* Doc. No. 73 at 15-16) (collecting cases)). Because

3  there is no binding case law on the issue, the Court must adopt the reasoning most consistent with

4  relevant Ninth Circuit, California case law, and legislative intent.

5  i.  Legislative History of Section 352.1

6  The legislative history of Cal. Code Civ. Proc. § 352.1 provides some relevant guidance

7  on how courts should view the potential interaction of statutory and equitable tolling. Prior to the

8  amendments to Section 352 enacted in 1994, an inmate was entitled to statutory tolling for the

9  entire period of his incarceration. *See* California Bill Analysis, S.B. 1445 Sen., 4/06/1994. These

10 tolling provisions were established in 1872, at a time when prisoners were barred from filing civil

11 lawsuits. *Id.* In 1975, however, inmates were given the ability to file civil actions with the

12 introduction of Penal Code Section 2601, the so-called "Inmate's Bill of Rights." *Id.*

13 In response to the soaring numbers of prisoner civil rights suits being filed following the

14 enactment of Penal Code Section 2601, the California Department of Justice along with the

15 California Correctional Peace Officers Association (CCPOA) co-sponsored Senate Bill 1445,

16 which sought to reduce the number of frivolous and old suits being filed against the California

17 Department of Corrections and Rehabilitation. *Id.* The initial draft of S.B. 1445 would have

18 ended statutory tolling for prisoners altogether; the co-sponsors noted that prisoners had access to

19 legal materials and simplified pleading forms to aid them in filing lawsuits. *Id.* The principal

20 concern of the co-sponsors was the ballooning number of civil suits filed by prisoners, many of

21 them frivolous, including the filing of numerous "older cases [against CDCR defendants that] are

22 very difficult to defend since witnesses and evidence may have disappeared and memories may

23 fade." California Bill Analysis, S.B. 1445 Sen., 4/06/1994. According to the co-sponsors, the

24 number of civil lawsuits initiated by inmates quadrupled between 1982 and 1993, with

25 approximately 1,000 civil lawsuits being filed by inmates in 1993. California Bill Analysis, S.B.

26 1445 Assem., 7/06/1994. During the same period, the inmate population tripled, from

27 approximately 40,000 to 130,000 inmates. *Id.* In 1993, the Department of Justice assigned 52

28 lawyers to respond exclusively to inmate lawsuits; 40,000 hours were billed. California Bill

1    Analysis, S.B. 1445 Assem., 8/09/1994.

2            Prisoner's rights and prison litigation groups, however, countered that many prisoners did

3    not have access to legal resources and law materials and that the legislature would need to ensure

4    those resources were available if it were to eliminate the statutory tolling provisions of Section

5    352. California Bill Analysis, S.B. 1445 Sen., 3/15/1994. In a compromise, the legislature

6    ultimately modified the bill to set specific limits on statutory tolling, depending on the type of

7    civil action. *See* California Bill Analysis, S.B. 1445 Assem., 7/06/1994 (noting that co-sponsors

8    were offered a "compromise" under which statutory tolling for inmate lawsuits would be capped

9    at three years); California Bill Analysis, S.B. 1445 Sen., 8/16/1994 (noting that "Assembly

10   Amendment reduce to two years, rather than eliminate, the tolling provision"). The legislative

11   history above reflects a clear concern with ensuring that prisoners civil rights claims against the

12   state are timely filed. *See* California Bill Analysis, S.B. 1445 Sen., 8/16/1994 ("The purpose of

13   this bill is to require prisoners to bring their actions against the state in a timely manner"). While

14   the legislative history does not address the specific question of how equitable tolling should be

15   applied, any further extension of the inmate's tolling period—except perhaps in limited

16   circumstances to avoid manifest injustice—threatens to undermine the very purpose in revising

17   Section 352. Indeed, given that equitable tolling is not constrained by any specific time limits,

18   routinely applying it consecutively with statutory tolling would effectively mark a return to the

19   era of unlimited tolling that preceded enactment of Section 352.1. Thus, the Court finds the

20   relevant legislative history counsels against a liberal application of equitable tolling when the

21   applicable tolling events overlaps with the statutory tolling period.

22                              ii.   Case Law

23           The Court turns next to the extensive case law examining the question of how to apply

24   statutory and equitable tolling. Looking to the cases that reach opposite conclusions on this issue,

25   the Court observes that they diverge on the interpretation and applicability of *Lantzy v. Centex*

26   *Homes*, cited above. In *Lantzy*, a construction defect case, the California Supreme Court sought

27   to determine whether the 10-year statute of limitations provided by California Code of Civil

28   Procedure § 337.15 should be extended under principles of either equitable tolling or equitable

1

2

estoppel based on plaintiff's attempts to repairs the latent construction defects.  *Lantzy*, 31 Cal.

3

4th at 367.  Ultimately, the court concluded that estoppel might be available, but that equitable

4

tolling was not appropriate.

5

The court explained the application of equitable tolling as follows:

6

7

8

the effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded.  As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred.

9

*Lantzy*, 31 Cal. 4th at 370–71 (emphasis in original).  While courts in this circuit have cited this

10

language to conclude that a period of equitable tolling must be "tacked on" to the two-year

11

statutory tolling provided by Cal. Code of Civil Procedure § 352.1, *see, e.g., Stevenson*, 2017 WL

12

2958731 at *5-6; *see also Carranza v. Lewis*, 2017 WL 1050538, at *18 (N.D. Cal. Mar. 17,

13

2017), there are several reasons not to apply this language from *Lantzy* in that manner.

14

First, *Lantzy* was a construction defect case, not a prisoner civil rights case, and thus is

15

arguably inapposite for that reason alone.  Notably, the only reference in *Lantzy* to Cal. Code of

16

Civil Procedure § 352.1 is in a footnote, and the court explicitly refrains from opining on how any

17

form of statutory tolling might affect the court's analysis.  *Id*. at 383 n. 17.  Further, the facts of

18

*Lantzy* did not involve overlapping tolling periods, which is the central issue here, and thus the

19

critical language cannot be read to authorize stacking two tolling events that overlapped in time.

20

*See Reece v. Basi*, 2013 WL 1339048, at *7 (E.D. Cal. Apr. 3, 2013) (noting that "*Lantzy* did not

21

consider, and cannot govern, a situation in which a limitations period is already tolled when an

22

event with independent power to toll occurs").

23

The oft-cited passage in *Lantzy* merely describes the basic mechanics of tolling—during a

24

tolling event, the limitations period stops running, and at the end of the limitations period the

25

tolled period is added on (or "tacked on"), thereby extending the limitations period.  Some courts

26

have interpreted the "no matter when it took place" language to mean "regardless of whether it

27

overlaps with another tolling period," *see, e.g., Carranza*, 2017 WL 1050538 at *18 ("[N]o

28

matter when [the equitable tolling event] took place, [the duration of the equitable tolling event]

13

is tacked onto the end of the limitations period"), but this reading is unwarranted given that the court in *Lantzy* was not confronted with the interaction of statutory and equitable tolling.

Another case cited as justifying a consecutive approach is *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005); *see, e.g.*, *Stevenson*, 2017 WL 2958731, at *6 (finding that applying equitable and statutory tolling consecutively is "most consistent with Ninth Circuit authority on tolling pending exhaustion of administrative relief" and citing *Brown*). *Brown* stands for the proposition that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown*, 422 F.3d at 943. However, like *Lantzy*, *Brown* did not consider the situation where statutory and equitable tolling might overlap and if so whether to double-count them. Thus, *Brown* is arguably inapposite here. Indeed, the plain language of *Brown* supports the common-sense view that tolling applies *during* the tolling event but says nothing about whether it should be added on later if exhaustion of administrative remedies is completed *before* the statute of limitations has started running.

Indeed, the Court finds more persuasive the "common sense" approach articulated in *Reece v. Basi*, 2013 WL 1339048, at *8 (E.D. Cal. Apr. 3, 2013), whose facts are nearly identical to those in this case.[10] In *Reece*, the prisoner plaintiff filed a federal lawsuit on October 13, 2011, four years and seven months after his claims accrued on March 14, 2007. 2013 WL 1339048 at *6. Under Cal. Code Civ. Proc § 352.1 the statute of limitations on the plaintiff's claim did not begin to run until March 14, 2009. *See id*. at 8 (noting that "[u]nder California law, § 352.1(a) prevents the statute of limitations from running until two years after accrual of a prisoner's cause of action") (citing *Carlson v. Blatt*, 87 Cal. App. 4th 646, 650 and *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999)). Plaintiff had completed the exhaustion process nearly 15 months earlier, on December 4, 2007. *Reece*, 2013 WL 1339048 at *7. Thus, the statute of limitations did not begin

---

[10] While not binding, the court may look to unpublished cases issued after January 1, 2007 as persuasive authority. *See* Fed. R. App. Proc. 32.1 (stating that a court may not prohibit the citation to opinions that have been designated "unpublished" that were issued after January 1, 2007); *see also Cont'l W. Ins. Co. v. Costco Wholesale Corp.*, 2011 WL 3583226, at *3 (W.D. Wash. Aug. 15, 2011) (rejecting motion for reconsideration based on court's citation to unpublished district court opinions because FRAP 32.1 authorizes such citations and "the distinction between 'published' and 'unpublished' federal district court decisions is meaningless" in light of how district court cases are published and depublished).

1   running until well after the plaintiff had already completed his exhaustion of administrative

2   remedies.  The *Reece* court noted, "[a]t any given time following the accrual of a cause of action,

3   the limitations period is either running or it is tolled, and only a running state can be tolled." *Id*.

4   at *8.  Because no "tolling event" was in effect during the actual running of the statute of

5   limitations period, which began March 14, 2009, the court found that there was no basis to extend

6   it beyond four years and found the plaintiff's claim untimely.  *Id*.  This same logic applies to

7   render moot other tolling events Plaintiff cites in his Response that occurred in the two-year

8   period when statutory tolling was in effect.[11]

9                             iii.   Post-Exhaustion Tolling Events

10          Nor does the court find that Plaintiff should be entitled to equitable tolling for tolling

11   events that occurred long after he exhausted his administrative remedies.  In his Response to the

12   Order to Show Cause, Plaintiff contends that after the statutory tolling period ended, he

13   experienced two periods of time without access to his legal property, which totaled 148 days.

14   (*See* Doc. No. 18 at 4 ¶¶ 4-5).  These periods are September 6, 2019 to October 15, 2019 and

15   February 27, 2020 to June 18, 2020.  (*Id*.).

16          Plaintiff cites *Lott v. Mueller*, 304 F.3d 918 (9th Cir. 2002), a habeas case, for the

17   proposition that courts should consider whether to apply equitable tolling during a time that

18   plaintiff lacked access to his legal files.  While that case was decided in the context of a habeas

19   corpus petition, the court finds no reason not to accept it as persuasive authority here.  However,

20   unlike with exhaustion of administrative remedies, equitable tolling based on lack of access to

21   legal files is not automatic and requires an evaluation of whether 1) Plaintiff provided timely

22   notice to Defendants, 2) whether Defendants would be prejudiced by the application of equitable

23   tolling, and 3) reasonable and good faith conduct by Plaintiff.  *See McDonald*, 45 Cal. 4th at 102.

24          "The purpose of California's equitable tolling doctrine 'is to soften the harsh impact of

25   technical rules which might otherwise prevent a good faith litigant from having a day in court.'"

26   *Jones*, 393 F.3d 918, 928, quoting *Daviton v. Columbia/HCA Healthcare Corp*., 241 F.3d 1131,

27   ─────────────

28   [11] This includes a brief hospital stay in January 2016, and a four-month period when Plaintiff was without his legal property beginning in September 2016.  (*See* Doc. No. 18 at 3, 5).

                                                    15

1137 (9th Cir. 2001) (en banc).  "Thus California courts apply equitable tolling 'to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.'"  *Id*. quoting *Lantzy*, 2 Cal.Rptr.3d at 660, 73 P.3d at 523.

The Ninth Circuit in *Jones* noted that:

> Fairness to the defendant requires that a case be brought when memories have not been affected by time, when all pertinent witnesses can still be called, and when physical evidence has not been destroyed or dispersed.  In addition to these evidentiary concerns, the public has an interest in avoiding the cultivation of stale grievances and grudges.  Statutes of limitations are not legalistic gimmicks but embody the experience of Anglo–American law that it is sound public policy to set a specific time within which a given legal action may be brought.  But if some obstacle unanticipated by the legislature has prevented a plaintiff from pursing his claim, equity may find a way around the statute.

*Jones*, 393 F.3d at 928.

Here, while Plaintiff arguably provided timely notice to the defendants by filing a grievance with CDCR, the Court does not find that the second and third *McDonald* factors favor Plaintiff.  By delaying the filing of this suit by nearly three years, Plaintiff has forced Defendants to defend against stale claims that were made staler by delays related to the COVID-19 pandemic.  As a result, Defendants must now summon evidence and rely on memories of an event that occurred in late 2015 and early 2016—nearly nine years in the past—and that will only be more remote by the time of an eventual trial.  (*See* Doc. No. 30); *see also Jones*, 393 F.3d at 928.

The Court cannot infer from the record that Plaintiff's actions were reasonable and that he pursued his claims in good faith.  Plaintiff exhausted his administrative remedies on September 12, 2017.  He implies that losing access to his legal property in September 2019 and again in February 2020 prevented him from filing this case.  (Doc. No. 18 at 3-4).  But Plaintiff does not explain why he was unable, in the two years after he completed exhaustion of administrative remedies, to file this lawsuit, other than a vague and conclusory reference to waiting for the dismissal of the defendants in *Mitchell v. Davey*.  (Doc. No. 18 at 4 ¶ 6).  The Court does not find that these facts reflect Plaintiff acted reasonably and in good faith, and therefore declines to apply equitable estoppel based on Plaintiff's lack of access to his legal files.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv.   Conclusion

In sum, the Court does not find that applying statutory and equitable tolling consecutively is proper as a general matter, nor does it find it warranted under the circumstances of this case.  If Plaintiff had missed the deadline by 24 days, as in *Stevenson*, and otherwise demonstrated that he pursued the claims in good faith, those facts might have warranted applying equitable tolling in order "to ensure fundamental practicality and fairness."  *Lantzy*, 31 Cal. 4th at 370.  But given the prejudice to Defendants and Plaintiff's failure to pursue his claims in good faith, the Court does not find it appropriate to deviate from the common-sense approach of applying overlapping statutory and equitable tolling periods concurrently.  *See Reece*, 2013 WL 1339048 at *7.

e.   Plaintiff's State Law Claims are Also Time-Barred

In addition to his claims brought under section 1983, Plaintiff also proceeds on his state law claims for IIED, negligence, and violation of the Bane Act.  As noted above, the state statute of limitations for personal injury actions in California, including the Bane Act, is two years.  *See* Cal. Code Civ. Proc. § 335.1; *see also Fenters v. Yosemite Chevron*, 761 F.Supp.2d 957, 995–96 (E.D. Cal.2010) (holding Bane Act claim subject to two-year statute of limitations provided by California Code of Civil Procedure section 335.1); *see Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 853 (2018) (noting two-year statute of limitations provided by Cal. Code Civ. Proc. 335.1 applies to IIED claims).

Plaintiff is entitled to two years of statutory tolling of the statute of limitations for his state law claims pursuant to Cal. Code Civ. Proc. § 352.1(a).  Thus, his deadline to file his state law claims was January 2, 2020.  For the same reasons articulated above as to his federal claims, the Court does not find that Plaintiff is entitled to extend that deadline based on equitable tolling, either because the tolling event was subsumed within the statutory tolling period, or because equitable considerations do not warrant extension of the statute of limitations.  Accordingly, the Court finds that Plaintiff's state law claims, filed June 22, 2020, are also untimely and will recommend they be dismissed.

////

17

1

**D. Leave to Amend is Futile**

2       If a motion to dismiss is granted, "[the] district court should grant leave to amend even if

3  no request to amend the pleading was made . . ." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th

4  Cir.2012).  However, leave to amend need not be granted if amendment would be futile or if the

5  plaintiff has failed to cure deficiencies despite repeated opportunities.  *See Mueller v. Aulker*, 700

6  F.3d 1180, 1191 (9th Cir. 2012); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir.

7  2010).  Here, Plaintiff was afforded two opportunities to amend his complaint.  (*See* Doc. Nos.

8  10, 30).  And because Plaintiff's claims are barred by the statute of limitations, a defect that

9  cannot be cured by further amendment, further leave to amend would be futile.  *See Vigil v.

10  Miller*, 17 F. App'x 657, 658 (9th Cir. 2001) ("[b]ecause the statute of limitations acted as an

11  absolute bar to appellants' claims, any amendment would have been futile.).

12       **E.  Dismissal Constitutes Strike**

13       Under Ninth Circuit precedent, a dismissal of an action as barred by the appliable statute

14  of limitations, even where a plaintiff asserts equitable tolling, constitutes a strike under the Prison

15  Litigation Reform Act. *Belanus v. Clark*, 796 F.3d 1021, 1030 (9th Cir. 2015).  Thus, the district

16  court should designate this dismissal as constituting a strike under 29 U.S.C. § 1915(g).

17       Accordingly, it is **ORDERED**:

18       Defendant's Request for Judicial Notice (Doc. No. 75) is GRANTED.

19       It is further **RECOMMENDED**:

20       Defendants' Motion to Dismiss (Doc. No. 74) be GRANTED and this case be dismissed

21  with prejudice and the dismissal qualify as a strike under 28 U.S.C. § 1915(g).

22                                **NOTICE TO PARTIES**

23       These Findings and Recommendations will be submitted to the United States District

24  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

25  after being served with a copy of these Findings and Recommendations, a party may file written

26  objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned,

27  "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

28  **(15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party

1  wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its

2  CM/ECF document and page number, when possible, or otherwise reference the exhibit with

3  specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by

4  the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §

5  636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the

6  waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

7

8  Dated:    November 18, 2024

9  HELENA M. BARCH-KUCHTA
   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28